IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DELLA M. COOLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 16 C 0016 |
| v. | ) | |
| | ) | Magistrate Judge Sidney I. Schenkier |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER[2]

Plaintiff Della M. Cooley ("Ms. Cooley" or "Plaintiff") seeks reversal or remand of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits (doc. # 12: Pl.'s Mem. in Support of Summ. J.). The Commissioner has filed a motion seeking affirmance of the decision denying benefits (doc. # 19: Def.'s Mot. for Summ. J.). For the following reasons, we grant the Commissioner's motion and affirm the Commissioner's decision.

### I.

Ms. Cooley applied for benefits on February 4, 2011, alleging she became disabled on October 10, 2005 (R. 286), due to high blood pressure, fibromyalgia, sleep apnea, and carpal tunnel syndrome ("CTS") (R. 127). She later amended her alleged onset date to October 1, 2008 (R. 306). Her date last insured ("DLI") was June 30, 2012, approximately four months before she turned 50 years old (R. 20). Ms. Cooley's claim was denied initially and on reconsideration, and

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), we have substituted Acting Commissioner of Social Security Nancy A. Berryhill as the named defendant.

[2] On January 28, 2016, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (doc. # 8).

after a hearing on July 24, 2012, the Administrative Law Judge ("ALJ") issued an opinion on October 22, 2012, denying Ms. Cooley's request for benefits. On November 29, 2013, the Appeals Council vacated the ALJ's decision and remanded Ms. Cooley's claim to the ALJ. Ms. Cooley appeared for a second hearing before the same ALJ on May 30, 2014. On July 24, 2014, the ALJ issued another written decision finding Ms. Cooley was not disabled from October 1, 2008 through the DLI (R. 15-35). The Appeals Council denied Ms. Cooley's request for review of the decision (R. 1-6), making the ALJ's July 2014 ruling the final decision of the Commissioner. *See Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

## II.

Plaintiff testified that she worked for years in customer service at Nicor Gas before being terminated in 2007 after having trouble working due to pain in her arm, back and neck (R. 112-13). The record shows that Ms. Cooley visited her primary care doctor, Sanjay Pethkar, M.D., at Suburban Healthcare Associates from January 2006 through November 2008, and then again from May 2011 through 2014. During the earlier visits, Ms. Cooley intermittently complained of neck and arm pain, high blood pressure (hypertension), headaches, tingling and numbness in her hands or arms due to CTS and fatigue from sleep apnea (despite her use of a CPAP machine) (R. 417-84). At the appointments during which Ms. Cooley complained of neck pain, Dr. Pethkar at times recorded that she had muscle spasms, tenderness and decreased motion in her cervical spine (neck) (*Id.*). Dr. Pethkar consistently diagnosed Ms. Cooley with hypertension and CTS, and occasionally diagnosed her with fibromyalgia or radiculopathy (nerve pain) of the upper extremity when she complained of neck pain (*Id.*).

Ms. Cooley also complained of cramping, tingling and numbness in her legs in October 2008, and examination that day showed muscle spasm and tenderness in her lower (lumbosacral)

spine (R. 441). Dr. Pethkar treated Ms. Cooley with medication for high blood pressure and occasionally medication for nerve pain (Effexor) (*Id.*). At Ms. Cooley's November 2008 visit, Dr. Pethkar noted that she could not work due to multiple medical problems (R. 440).

On March 6, 2009, Meda Raghavendra, M.D., examined Ms. Cooley for an initial consultation at a pain management clinic (R. 537-40). Dr. Raghavendra recorded that she had normal strength and ambulation, but was positive at fibromyalgia tender points throughout her body (R. 539-40). Ms. Cooley did not have a follow-up appointment with him (*Id.*).

Kimberly Middleton, M.D., performed a consultative examination of Ms. Cooley on March 25, 2011. Dr. Middleton reported that Ms. Cooley's strength, movements, gait and balance were normal, but she had "mild tenderness" at fibromyalgia trigger points in the low bilateral cervical region, occiput (back of the head), trapezius, bilateral gluteal region, bilateral greater trochanter, and bilateral knees (R. 499). She concluded that Ms. Cooley had fibromyalgia, CTS and sleep apnea, although Ms. Cooley did not appear to be easily fatigued that day (R. 500). Dr. Middleton opined Ms. Cooley could perform sedentary to medium work, but with limits on lifting, pulling, pushing and operating heavy or vibratory machinery (*Id.*).

Ms. Cooley returned to Dr. Pethkar on March 29, 2011, complaining of pain in her neck and both arms as well as daytime drowsiness from sleep apnea (R. 506). Ms. Cooley's examination was normal, but Dr. Pethkar wrote that she "cannot work due to multiple medical problems" (R. 507). On that same visit, Dr. Pethkar and Ms. Cooley completed a disability status update relating to Ms. Cooley's long term disability claim with Unum Life Insurance Company (R. 524-32). Dr. Pethkar stated that Ms. Cooley's diagnoses were CTS, fibromyalgia, sleep apnea, and radiculopathy, and that she could not drive due to sleep apnea and CTS (*Id.*). Dr. Pethkar checked boxes indicating that Ms. Cooley could occasionally (up to one-third of the

day): sit, stand, walk, lift/carry up to 20 pounds, push/pull, perform fine finger movements, climb, twist/bend/stoop and reach above shoulder level (R. 527). On the same form, Ms. Cooley reported that muscle pain and stiffness made it difficult to complete household chores and that she experienced daytime sleepiness, among other symptoms (R. 528). However, she did not need assistance caring for herself or performing daily activities; she just performed them slowly (*Id.*).

On April 11, 2011, state agency medical consultant, Richard Bilinsky, M.D., assessed Ms. Cooley's residual functional capacity ("RFC") (R. 127-34). He found that her statements were "somewhat excessive when compared to the objective medical evidence," and opined that Ms. Cooley could perform light work and stand, walk or sit for a total of about six hours in an eight-hour workday with unlimited ability to push and/or pull (R. 131). This opinion was affirmed on reconsideration by Francis Vincent, M.D. (R. 521-23).

In May 2011, Dr. Pethkar assessed Ms. Cooley with chronic fatigue syndrome, possible fibromyalgia, and chronic pain syndrome, and he prescribed Cymbalta (for nerve and muscle pain) and Tramadol (a narcotic) (R. 505). He also noted that Ms. Cooley took Oxycontin for pain (R. 504). In February 2012, Ms. Cooley also complained of low back pain and leg tingling; Dr. Pethkar prescribed Lyrica (for nerve and muscle pain) (R. 545-46).

On May 10, 2011, Jeff Floyd, a physician's assistant at Suburban Healthcare, completed chronic pain and sleep disorder RFC questionnaires on Ms. Cooley's behalf (R. 514-20). He wrote that Ms. Cooley's fibromyalgia, CTS, hypertension, and sleep apnea caused intermittent flare-ups of chronic pain and fatigue, which would frequently interfere with the attention and concentration needed to perform even simple work tasks (R. 514). Mr. Floyd wrote that Ms. Cooley could sit for 15 to 20 minutes and stand for 10 to 15 minutes before needing to change positions, and sit, stand or walk no more than two hours total in an eight-hour work day (R. 515).

She would also need intermittent periods of walking around for 5 to 10 minutes at a time (*Id.*). Mr. Floyd also indicated that Ms. Cooley could only rarely lift and carry 10 pounds and had significant limitations doing repetitive reaching, handling or fingering (R. 516).

## III.

Ms. Cooley appeared at her first hearing before the ALJ on July 24, 2012. She testified that she tried working at Comcast in July 2010, but stopped after about six weeks because she had difficulty concentrating during training, felt pain in her back and neck after sitting for hours, her hands and wrists would "swell up" due to her CTS, and her blood pressure went up, making her lightheaded and dizzy (R. 104-06). Ms. Cooley testified that she saw her doctor every three to four months for management of her medication for blood pressure and fibromyalgia. Her fibromyalgia medication varied because she did not have insurance and could not always afford it; at times she could only afford Aleve or extra strength Tylenol (R. 106-09). Every two weeks, her pain was so bad that she could barely move around (R. 115). Ms. Cooley testified that she still felt fatigued despite using a CPAP machine at night, and CTS still caused her arm pain (R. 110-12). Nevertheless, Ms. Cooley tried to keep up her stretching exercises and daily activities, like cleaning the house, doing dishes, grocery shopping and cooking, though she could not stand or sit for more than 30 to 40 minutes due to pain (R. 115-16). She also visited her grandchildren about once per week and drove short distances (R. 117-19).

On October 22, 2012, the ALJ issued an opinion finding Ms. Cooley not disabled, but the Appeals Council remanded this opinion on November 29, 2013. On remand, the Appeals Council ordered the ALJ: to evaluate fibromyalgia at Step 2 of the evaluation process and under Social Security Ruling 12-2p; to consider more recent clinical records from Dr. Pethkar; to account for Ms. Cooley's increase in age -- to 50 -- in Step 5; to further evaluate Ms. Cooley's subjective

complaints; to further consider Ms. Cooley's maximum RFC; and to hold a new hearing and obtain supplemental evidence from a VE if warranted (R. 155-58).

Ms. Cooley made some additional visits to Dr. Pethkar in October 2012, February 2013 and October 2013 for blood pressure checks and cold and sinus trouble (R. 568, 571, 573). In July 2013, Ms. Cooley complained of leg and lower back pain, and Dr. Pethkar noted tenderness of the paraspinal muscles on palpation and decreased range of motion (R. 567). He prescribed Amitriptyline for nerve pain and Naprosyn (*Id.*). Ms. Cooley visited Dr. Pethkar again in January 2014 for pain in her right arm and leg, and Dr. Pethkar prescribed NSAIDs (R. 559-60).

The ALJ held a second hearing on May 30, 2014. After Ms. Cooley testified to decreasing functional abilities and increasing pain in her legs, arms and back (R. 46-58), a medical expert ("ME"), Sai Nimmagadda, M.D., testified as to Ms. Cooley's impairments during the period from October 1, 2008 through June 30, 2012 (her date last insured). He stated that Ms. Cooley's predominant symptom was "fibromyalgia/chronic fatigue syndrome" (R. 63). Dr. Nimmagadda did not see evidence that Dr. Pethkar performed trigger point examinations associated with his findings of fibromyalgia, but noted that Dr. Middleton's examination found nine trigger points (R. 64, 69). Dr. Nimmagadda stated that Ms. Cooley's impairments did not meet or equal a Listing (R. 79). He stated that Ms. Cooley had the RFC to: lift 20 pounds occasionally and 10 pounds frequently; stand, walk or sit for six hours in an eight-hour work day; occasionally push, pull, finger, feel, balance, stoop, kneel, crouch, and crawl; and never climb ropes, ladders, and scaffolds or drive long distances (R. 80-82). She had no limitations on handling and reaching, and she should avoid moderate exposure to vibration due to CTS (*Id.*).

The VE testified that a 50 year old individual with the above RFC would be capable of performing Ms. Cooley's past work as a customer service representative, which was sedentary

and skilled, and that a significant number of such jobs were available in the national economy (R. 87-89). The VE stated that if the individual needed to stand for five minutes after 30 minutes of sitting, that would result in a sedentary RFC (R. 90-91). However, no work would be available if the individual was off-task more than 85 percent of the work day or if the individual had to stand every 20 minutes of sitting because sedentary work requires frequent reaching, handling, and fingering (*Id.*). The VE stated her testimony was consistent with the Dictionary of Occupational Titles ("DOT") (R. 89-90).

## IV.

In her July 24, 2014 opinion, the ALJ followed the familiar five-step process for determining disability. At Step 1, the ALJ found that Ms. Cooley did not engage in substantial gainful activity from her alleged onset date of October 1, 2008 through her DLI of June 30, 2012 (R. 20). An unsuccessful work attempt in 2010 ended due to her medical condition and did not constitute substantial gainful activity (R. 20-21). At Step 2, the ALJ found that Ms. Cooley's sleep apnea, fibromyalgia/chronic fatigue syndrome, CTS, headaches, and chronic pain syndrome were severe impairments (R. 21-22). The ALJ relied on Dr. Nimmagadda's testimony that fibromyalgia and chronic fatigue syndrome were on the same spectrum of a single impairment (R. 21). The ALJ found that Ms. Cooley's hypertension, mild arthritis of the shoulder and obesity were not severe (R. 22).

At Step 3, the ALJ determined that Ms. Cooley's impairments, alone or in combination, did not meet or medically equality the severity of a Listing (R. 22). The ALJ set Ms. Cooley's RFC as the ability to perform light work except that she could occasionally push, pull, crawl, crouch, kneel, stoop, balance, and climb ramps or stairs; never climb ladders, ropes, or scaffolds or drive for more than 30 minutes consecutively; and must avoid concentrated exposure to

hazardous machinery and extreme cold and heat and moderate exposure to vibration (*Id.*). The ALJ stated that these limitations adequately accommodated Ms. Cooley's joint pain, headaches and fatigue, as well as her history of CTS and "intermittent" signs of reduced manipulative ability, in light of the "lack of significant neurological and clinical findings," the lack of diagnostic and electromyography evidence, and the routine nature of her treatment (R. 27).

The ALJ did not find Ms. Cooley's statements regarding the intensity, persistence, and limiting effects of her symptoms to be consistent with the objective medical evidence (R. 23). The ALJ recognized that Ms. Cooley's treating and examining physicians observed decreased lower extremity sensation, fatigue, positive tender points, positive tests for CTS, and "isolated findings of lumbar tenderness/spasm and decreased lumbar range of motion in October 2008" (R. 24).[3] However, the ALJ noted that her physicians also generally observed normal gait, reflexes, muscle and motor strength, grip and pinch strength, fine and gross hand movements, full range of motion of all joints, and normal neurological testing (*Id.*). In addition, the ALJ found that Ms. Cooley engaged in a "fair level of activities of daily living" through her DLI, including preparing simple meals, performing household chores, driving, caring for her young grandchildren, and shopping in stores, though she needed regular breaks to complete her daily tasks (R. 24-25). The ALJ also found that Ms. Cooley's treatment was "generally routine and conservative in nature," limited mostly to medication for her pain and hypertension (R. 25). Thus, the ALJ concluded that the evidence "did not convey the incapacitating symptoms alleged by the claimant" (*Id.*).

The ALJ afforded great weight to Dr. Pethkar's opinion regarding Ms. Cooley's functional, manipulative and exertional limitations, as stated in the form he filled out for Ms. Cooley's insurance claim in March 2011, because she found that it was consistent with the

---

[3]The ALJ recognized that there was some evidence from 2014 that Ms. Cooley's condition worsened after her DLI on June 30, 2012, but stated that evidence did not impact her pre-DLI functional limitations (R. 25).

medical record (R. 26). However, the ALJ gave no weight to Dr. Pethkar's statements that Ms. Cooley could not work due to multiple medical problems because they were "blanket and conclusory" and had no evidentiary basis (*Id.*).

Regarding the other medical opinions in the record, the ALJ determined that Dr. Nimmagadda's testimony was consistent with the clinical record and gave "considerable weight" to his assessment of Ms. Cooley's fibromyalgia/chronic fatigue syndrome (R. 25). She gave significant weight to the findings of the state agency medical consultants and Dr. Middleton's assessment, but added postural and manipulative restrictions based on other evidence in the record (R. 25-26). The ALJ gave little weight to the opinions of Mr. Floyd, because she found them "extreme and unsupported by the clinical and neurological findings of record" and inconsistent with the other opinion evidence (R. 26-27).

At Step 4, the ALJ found that Ms. Cooley was capable of performing her past relevant work as a customer service representative based on the VE's testimony of a hypothetical individual with Ms. Cooley's RFC (R. 28). Alternatively, at Step 5, the ALJ found that Ms. Cooley could perform other jobs existing in the national economy, including room rental clerk, counter clerk, and hostess (R. 28-29). The ALJ stated that the additional limitations suggested by Ms. Cooley's counsel to the VE -- including an allowance to alternate between sitting and standing and to take additional breaks -- were not supported by the evidence (R. 29).

## V.

We review the ALJ's decision deferentially to determine if it was supported by "substantial evidence," which the Seventh Circuit has defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016). "Although we will not reweigh the evidence or substitute our own

judgment for that of the ALJ, we will examine the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

Plaintiff argues that remand is needed because: (1) the ALJ failed to include Ms. Cooley's alleged need to alternate between sitting and standing in the RFC; (2) the ALJ failed to adequately accounting for her headache pain and sleep disorder in the RFC; (3) the ALJ improperly concluded that Ms. Cooley was capable of performing her past job as a customer service representative; and (4) the ALJ improperly concluded that Ms. Cooley was capable of performing other work (doc. # 12: Pl.'s Mem. at 8-14).[4] We address each argument in turn.

### A.

Ms. Cooley claims that she presented "extensive evidence" that she could not sit or stand for long periods of time due to pain, and thus, that the ALJ erred by failing to include a sit/stand option in her RFC (Pl.'s Mem. at 8-9). In support of her argument, Ms. Cooley refers to her own testimony that she could only sit for 15 to 20 minutes and stand for 10 to 15 minutes at a time, and Mr. Floyd's opinion indicating the same (*Id.*). However, the ALJ determined that Ms. Cooley's testimony that she could not stand or sit for long reflected her "estimation of her current level of functioning" at the May 2014 hearing, and thus was "not necessarily reflective of her capacity prior to the [DLI]" in June 2012 (R. 23). "So long as an ALJ gives specific reasons supported by the record, we will not overturn his credibility determination unless it is patently

---

[4]Ms. Cooley makes one additional argument that warrants only brief mention. She argues that remand is necessary because the ALJ failed to consider that she received nongovernmental long-term disability benefits (Pl.'s Mem. at 8). However, not only has Ms. Cooley failed to cite any supporting law -- the case she cites, *Allord v. Barnhart*, 455 F.3d 818 (7th Cir. 2006), concerns the need to consider *governmental* (Veterans Affairs) benefits -- but the ALJ did in fact consider the evidence of Ms. Cooley's application for long-term disability benefits, which consisted of the document completed by Ms. Cooley and Dr. Pethkar on March 29, 2011 (R. 524-32).

wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). The ALJ concluded that based on inconsistencies between Ms. Cooley's alleged functional limitations and other evidence in the record, her limitations on sitting and standing were "not supported by the totality of the evidence" (R. 29). As the ALJ's credibility determination "was tied to evidence in the record and was not patently wrong, . . . we may not disturb it." *Alvarado v. Colvin*, 836 F.3d 744, 749 (7th Cir. 2016).

In addition, the ALJ's decision to give Mr. Floyd's opinion little weight was supported by substantial evidence (R. 27). The ALJ compared Mr. Floyd's opinion with the other medical opinions in the record -- including Dr. Middleton's opinion that Ms. Cooley could perform sedentary to medium work, the state agency consultant's opinion that she could perform light work, and Dr. Pethkar's opinion that she could occasionally (or up to a third of the day) sit, stand and walk -- and found that Mr. Floyd's opinion as to her limitations was extreme and inconsistent (R. 24-27).[5] The ALJ can discount a medical opinion for being inconsistent with other medical opinions, as long as the ALJ "minimally articulates" the reasons for discounting the opinion. *See, e.g., Alvarado*, 836 F.3d at 748. The ALJ more than minimally articulated her reasons for discounting Mr. Floyd's opinion. Accordingly, we find that the ALJ's decision not to include a sit/stand option in Ms. Cooley's RFC was supported by substantial evidence.

**B.**

Ms. Cooley also argues that the ALJ failed to consider that her headaches and sleep disorder prevented her from performing full-time work (Pl.'s Mem. at 9-12). However, like Ms. Cooley's allegations that she could not sit and stand for long periods of time, the ALJ did

---

[5]We also note that no medical professional opined that Ms. Cooley required a "sit/stand option" in her RFC; Ms. Cooley's attorney simply presented this limitation as an alternative hypothetical for the VE to consider (*see* R. 90-92). Moreover, as the ALJ noted, a physical therapist is not an acceptable medical source for determining a claimant's impairments (R. 27); it should be considered but may not be given the controlling weight that would be accorded to a treating physician's opinion. *See Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016).

consider her allegations of functional limitations from headaches and sleep apnea -- both as relayed in her hearing testimony and in her complaints to her physicians. The ALJ found that headaches and sleep apnea were severe impairments, but concluded that they were not as limiting as Ms. Cooley claimed. In making this determination, the ALJ considered Ms. Cooley's activities of daily living, the treatment she received, and the opinion evidence of other physicians in the record. The ALJ noted that Ms. Cooley took medication to control her pain and hypertension, but determined that this treatment was conservative and did not support a more restrictive RFC.[6]

The ALJ then accounted for the limitations from headaches and sleep apnea that the ALJ found were supported by the evidence. To account for her headaches, the ALJ stated that Ms. Cooley must "avoid even moderate exposure to vibration," and to account for her daytime drowsiness due to her sleep disorder, the ALJ stated that Ms. Cooley should avoid concentrated exposure to hazardous machinery and driving for more than 30 minutes consecutively. The ALJ's decision not to fully credit Ms. Cooley's allegations of functional limitations from her headaches and sleep apnea was thus "tied to evidence in the record," and we will not disturb it. *Alvarado*, 836 F.3d at 749.

## C.

Next, Ms. Cooley argues that the ALJ erred when determining, at Step 4, that Ms. Cooley had the RFC to perform her past job as a customer service representative both as actually performed by Ms. Cooley and as generally performed in the national economy (R. 28). Ms. Cooley contends that this decision is "illogical" because she was fired from her position in 2007 and unsuccessfully attempted to perform a similar job in 2010 (Pl.'s Mem. at 13).

---

[6]Ms. Cooley contends that the ALJ's decision failed to consider side effects from her medication, but she points to no evidence that she suffered such side effects, and the ALJ already accounted for Ms. Cooley's allegations of daytime drowsiness in the RFC (*see* Pl.'s Mem. at 11-12).

Step 4 requires that the ALJ consider his or her assessment of the claimant's RFC and compare that with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 404.1560(b); 20 C.F.R. § 404.1520(a)(4)(iv). As we explained above, the ALJ did not err in determining Ms. Cooley's RFC. And, the VE determined that an individual with this RFC could perform Ms. Cooley's past work both as actually and generally performed. Thus, the ALJ did not err by relying on the VE's testimony. *Id.*

Even if -- as Ms. Cooley claims -- her previous employment had ended due to her impairments, Ms. Cooley "focuses on the wrong target when she addresses her testimony about her own . . . job rather than the tasks of the job as generally performed in the national economy, which is the proper analysis." *Dowlen v. Colvin*, 658 F. App'x 807, 812 (7th Cir. 2016) (affirming ALJ's determination that claimant could work as a mail sorter as it is generally performed, even if claimant could not work as a mail sorter as she had previously performed it because it required too fast a pace). Therefore, even if Ms. Cooley's employment ended due to her impairments, that does not require a finding at Step 4 that Ms. Cooley was incapable of performing her past relevant work.

## D.

Finally, Ms. Cooley argues that the ALJ erred at Step 5 because the additional jobs the ALJ found Ms. Cooley could perform did not include a sit/stand option (Pl.'s Mem. at 14). This argument fails because, as we explained above, the ALJ's decision not to include a sit/stand option in Ms. Cooley's RFC was supported by substantial evidence, and "[t]he ALJ is only required to incorporate into her hypotheticals those impairments and limitations that she accepts as credible" and that are supported by the medical record. *Murphy v. Colvin*, 759 F.3d 811, 820 (7th Cir. 2014); *see also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

Ms. Cooley also argues that the VE failed to explain the source of her job estimates and that it was error for the ALJ to rely on them (Pl.'s Mem. at 14). However, the VE explicitly stated that source of her opinions on the jobs available for the hypothetical claimant was the DOT and the Department of Labor's Bureau of Labor statistics (*see* R. 88-89, listing relevant DOT numbers).[7]

## CONCLUSION

For the foregoing reasons, plaintiff's request for reversal or remand (doc. # 12) is denied, and the Commissioner's Motion for Summary Judgment (doc. # 19) is granted. We affirm the ALJ's decision. The case is terminated.

ENTER:

Sidney I. Schenkier
United States Magistrate Judge

Dated: April 25, 2017

---

[7] At the hearing before the ALJ, Ms. Cooley's attorney suggested limitations on a hypothetical claimant that went beyond the categories listed in the DOT, and in response, the VE used her "experience" to determine what jobs might be available for the hypothetical claimant (*see* R. 93-94). The Seventh Circuit has suggested that when a VE limits the jobs available to a hypothetical claimant beyond what is specified in the DOT, the VE should explain in more detail how he or she calculated the numbers. *See, e.g., Hermann v. Colvin*, 772 F.3d 1110, 1112-14 (7th Cir. 2014). However, in this case, the ALJ only relied on the VE's testimony that was based on the DOT, not the additional VE testimony in response to Ms. Cooley's counsel's questions.